UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 18-cv-12233-ADB |
| $49,400 IN UNITED STATES | * | |
| CURRENCY SEIZED AT | * | |
| LOGAN AIRPORT, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

This case was brought by the United States seeking *in rem* forfeiture of $49,400 in United States currency seized from Robert N. Kenny at Logan International Airport. The United States alleges that the currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance. [ECF No. 1]. Currently pending before the Court is CLK Global, LLC, d/b/a Royal Supply's ("Claimant") motion to dismiss. [ECF No. 6]. Claimant contends that the Court lacks subject matter jurisdiction to hear this complaint and that the complaint fails to state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial. [Id.]. For the reasons stated herein, Claimant's motion to dismiss is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the complaint, [ECF No. 1], and the affidavit of David X. O'Neill, Special Agent with the United States Drug Enforcement Agency ("DEA"), [ECF No. 1-3], the well-pleaded allegations of which are taken as true for the purposes of

evaluating the motion to dismiss.  See, e.g., United States v. One Check in the Amount of $47,000, No. 14-cv-14261, 2016 WL 7197372, at *6 (D. Mass. Dec. 9, 2016).

On May 1, 2018, at approximately 4:00 pm, the Massachusetts State Police ("MSP") stopped Mr. Kenny at a Transportation Security Administration ("TSA") checkpoint in Logan International Airport after a routine TSA screening revealed that he was traveling with a large amount of bundled cash in his backpack. [ECF No. 1-3 ¶¶ 7–10]. The currency was packaged in several separate bundles bound by rubber bands and emanated a scent of marijuana. [Id.]. During questioning by MSP, Mr. Kenny readily revealed that he had flown into Boston that morning, had met with a business contact in Bellingham, MA to collect payment for services rendered, and now planned to fly back to San Francisco with the currency on a same day flight. [Id. ¶¶ 11–12]. Mr. Kenny identified himself as the Chief Executive Officer of a San Francisco-based company called Royal Supply, which he said specializes in "products packaging and marketing . . . focusing on food and other items." [Id. ¶ 11]. He furnished a business card to this effect. [Id.].

Mr. Kenny informed the officers that he had met with a man named "Chris" in what he believed was Bellingham, MA, but could not provide further information on the location or the business "Chris" runs that had required Royal Supply's services. [Id. ¶¶ 12–13]. When probed further, Mr. Kenny stated, "I'm not sure if [Chris] even has a company." [Id.]. Mr. Kenny did not explain why he had been paid in cash but did state that he was unable to deposit the currency because Royal Supply uses Chase Bank, which has no branches in Massachusetts. [Id. ¶ 14]. The Government later subpoenaed Verizon Wireless for information on calls made to and from Mr. Kenny's cell phone leading up to the transaction in Bellingham. [Id. ¶ 20]. The records indicated that Mr. Kenny had recently been in contact with a man named "Chris" who resides in Franklin, MA and is known to the DEA as a suspected marijuana trafficker. [Id.]. The subpoenaed cell

phone records also indicated that Mr. Kenny had been in contact with a second individual in the Bellingham area who has a record of arrests for marijuana-related charges. [Id. ¶ 21].

While MSP questioned Mr. Kenny, Special Agent O'Neill reviewed Royal Supply's website, www.RoyalSupplyWholesale.com. [Id. ¶ 16]. The website revealed that the company "specializes in packaging for marijuana related items" and contained references to the marijuana trade, including the motto, "We've got what you need, except for the weed," and a telephone number of 1-888-PACK-420. [Id. ¶ 16]. Law enforcement then brought the currency to a secured location where there was a police dog trained to detect the scent of controlled substances. [Id. ¶¶ 18–19]. The dog proceeded to locate the currency in the room, which indicated the presence of narcotics odor. [Id.]. Additional investigation into Royal Supply cast doubt upon whether the business has a storefront, warehouse or other physical address, and a review of the company's Chase Bank account indicated that it had made 29 cash deposits totaling $159,852 in a period of less than five months. [Id. ¶¶ 22–23].

On October 25, 2018, the United States instituted this *in rem* action for forfeiture of the seized currency. [ECF No. 1]. On November 26, 2018, Claimant filed its verified statement of interest asserting its claim to the currency, [ECF No. 3], and on December 17, 2018, Claimant filed the pending motion to dismiss alleging (1) a lack of *in rem* jurisdiction because no arrest warrant *in rem* had been issued and (2) a failure to "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial," [ECF No. 6 at 1]. On February 6, 2019, the Government filed its opposition. [ECF No. 8]. On February 6, 2019, the Court issued a warrant *in rem* for the arrest of the currency. [ECF No. 9].

## II.   DISCUSSION

### A.   Subject Matter Jurisdiction

At the time Claimant filed its motion to dismiss, the Court had not issued a Warrant and Monition *in rem* for the arrest of the currency. [ECF No. 6 at 1–2]. Pursuant to Rule G(3)(b) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, the Court issued a warrant on February 6, 2019. [ECF No. 9]. Claimant's argument that the Court lacks subject matter jurisdiction to hear this forfeiture action, [ECF No. 6 at 2], is therefore moot.

### B.   Sufficiency of the Complaint

Claimant argues that the complaint should be dismissed because it fails to state "sufficiently detailed facts to support a reasonable belief" that the Government will prevail at trial. [Id. at 1]. He further contends that the conclusion that the currency is traceable to an instance of drug trafficking is unfounded because it (1) does not account for Mr. Kenny's candor regarding his identity and travel plans; (2) relies on evidence that may not be conclusive proof of illegal activity; and (3) fails to allege a substantial connection between the seized currency and a particular incidence of criminal activity. See [Id. at 6–8]. The Government responds broadly to these arguments by stating that an attack on the sufficiency of the evidence is not appropriate at the pleading stage when the Court is required to accept all allegations in the complaint as true. [ECF No. 8 at 7]. For the reasons discussed below, the Court finds that the complaint presents sufficient factual allegations to survive the motion to dismiss.

#### 1.   Legal Standard

To evaluate a motion to dismiss in the asset forfeiture context, the Court must apply a unique, heightened level of review under the Supplemental Rules of Civil Procedure pertaining

to asset forfeiture. A motion to dismiss made pursuant to Supplemental Rule G(8)(b) is governed by Supplemental Rule G(2), which requires that a complaint must "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). A sufficiently detailed complaint contains enough information that a Claimant can understand the theory of forfeiture, begin an investigation, and file a response. See United States v. $22,173.00 in U.S. Currency, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010).

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government must prove by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c). If the Government's theory of forfeiture is that the property was used in or involved in, or facilitated a crime, the Government must "establish that there was a substantial connection between the property and the offense." Id. CAFRA instructs that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). CAFRA also permits the Government to use evidence gathered after a complaint is filed to meet its burden at trial. 18 U.S.C. § 983(c).

2.    Mr. Kenny's Candor

Claimant first argues that the O'Neill affidavit is insufficient because it fails to account for potentially exculpatory evidence, namely that during questioning Mr. Kenny freely shared information with the MSP regarding his identity and his travel plans. [ECF No. 6 at 6]. Claimant, however, presents no arguments about why this evidence should be considered. Evidence that Mr. Kenny freely shared information is not necessarily exculpatory. Furthermore, while Claimant will bear the burden of proving at trial that it was an innocent owner, see 18 U.S.C.

§ 983(d), evidence that Mr. Kenny was forthright in some of his answers is of little relevance at this stage in light of the totality of the facts alleged.

        3.     <u>Sufficiency of the Evidence</u>

Claimant also argues that carrying a large amount of cash, refusing to answer questions, and an alert by a narcotics dog are either not *per se* evidence of illegal activity or are of little probative value. [ECF No. 6 at 6–8]. Each of these arguments attacks the quality of the evidence rather than its sufficiency, which is the relevant inquiry under Supplemental Rule G(2). <u>See</u> Fed. R. Civ. P. Supp. R. G(2)(f). While there may be merit to Claimant's arguments concerning the weight and credibility of the Government's evidence, these arguments are not relevant at the pleading stage when the evidence must be construed in the Government's favor. <u>See</u> <u>One Check in the Amount of $47,000</u>, 2016 WL 7197372, at *6 (upholding complaint at pleading stage despite "tenuous" evidence because CAFRA provides "that a complaint may not be dismissed on the basis of inadequate evidence at the time the complaint is filed"); <u>see also</u> <u>United States v. Funds in the Amount of Forty-Five Thousand Fifty Dollars ($45,050.00)</u>, No. 06 C 6948, 2007 WL 2323307, at *6 (N.D. Ill. Aug. 9, 2007) ("While these allegations may not be dispositive, courts evaluating forfeiture cases look to the 'totality of the evidence,' in determining whether a complaint has set forth a reasonable belief that the government can prevail at trial." quoting <u>United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars</u>, 403 F.3d 448, 455 (7th Cir. 2005)).

Although possessing a large amount of cash is not necessarily indicative of illicit activity, this Court has found that such possession "along with other circumstances" can be sufficient to support a conclusion that the currency may be tied to drug trafficking. <u>One Check in the Amount of $47,000</u>, 2016 WL 7197372, at *6 (quoting <u>United States v. Real Prop. with Any</u>

<u>Improvements Thereon Located at 40 Clark Rd., Sandisfield, Mass.</u>, 52 F. Supp. 2d 254, 263 (D. Mass. 1999)). Here, the circumstances of the currency's packaging, its noticeable scent of marijuana, the confirmation by a narcotics dog, Royal Supply's apparent involvement in the marijuana industry, and the involvement of a man the DEA believes to be a suspected marijuana trafficker, taken together, are sufficient to support a reasonable belief that the Government will be able to prove the currency is connected to drug trafficking. See <u>Funds in the Amount of Forty-Five Thousand Fifty Dollars</u>, 2007 WL 2323307, at *6 ("[T]he government's allegations of suspicious behavior, coupled with the dog-sniff evidence, are sufficient to support a reasonable belief that the government will be able to prevail at trial.").

4.    <u>Substantial Connection to Illicit Activity</u>

Finally, Claimant asserts that the Government's complaint should be dismissed because it does not plead sufficient facts to prove "more than an incidental or fortuitous connection to criminal activity." [ECF No. 6 at 8 (quoting <u>United States v. 434 Main Street</u>, 961 F. Supp. 2d 298, 322 (D. Mass. 2013))]. Claimant argues that because the complaint fails to allege details that link the currency to a specific criminal act, the Government has impermissibly instituted a forfeiture action on the mere "suspicion" that a drug crime has been committed. [<u>Id</u>. at 9]. In response, the Government states that it is not required to identify a specific criminal act at this stage. [ECF No. 8 at 12].

The Government's position is directly supported by Supplemental Rule G(2)(f), which requires a complaint to demonstrate a reasonable belief that the Government will be able to connect forfeited property to illicit activity at trial to survive a motion to dismiss. See <u>Funds in the Amount of Forty-Five Thousand Fifty Dollars</u>, 2007 WL 2323307, at *5 ("[T]he [G]overnment's complaint does not fail because it has not alleged any 'act whereby a controlled

substance was exchanged for the currency seized.' Numerous courts have held that the [G]overnment need not trace seized property back to a specific illegal transaction . . . ." (citation omitted)). Given the pleaded facts, including the appearance and scent of the currency, as well as Mr. Kenny's apparent connections to the marijuana industry, it is reasonable to believe that further investigation into the May 1, 2018 meeting with "Chris" will yield proof of a more substantial connection between the seized currency and illicit drug trafficking.

## III.   CONCLUSION

Accordingly, the Court finds that it has subject matter jurisdiction to hear this action and that the complaint contains sufficiently detailed facts to survive a motion to dismiss challenge at the pleading stage. Claimant's motion to dismiss [ECF No. 6] is therefore DENIED.

**SO ORDERED.**

March 19, 2019                                        /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE